**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

MARSHALL WES SLADE,

      Plaintiff,

v.                                   Case No.: 3:16-cv-59-RV-MJF

OFFICER CHRIS FOREHAND, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Marshall Wes Slade, proceeding *pro se*, brought this action under 42 U.S.C. § 1983, against Officer Chris Forehand and Officer Michael Gibowski, in their official and individual capacities, and the City of Pensacola, Florida, for alleged violations of his constitutional rights. (Doc. 1 at 1-2). Plaintiff's complaint also includes various Florida state law claims. The Defendants move for summary judgment on all counts. (Doc. 20 at 1). For the reasons discussed below, the undersigned recommends that the Defendants' motion for summary judgment be granted in part and denied in part.[1]

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background

The facts are recounted below from Plaintiff's verified complaint.[2] *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (when considering a motion for summary judgment, a district court must evaluate all material facts and logical inferences drawn from the evidence in the light most favorable to the nonmoving party).

On August 14, 2015, Plaintiff observed Officer Forehand ("Forehand") and Officer Gibowski ("Gibowski") conducting a traffic stop on another vehicle. (Doc. 1 at 3). Plaintiff approached the vehicle and informed the passengers that they had the right to remain silent and the right not to consent to a vehicle search. (*Id.*). Forehand explained to the Plaintiff that it was okay for him to observe, but he must remove his hands from his pockets. (*Id.*). Once Forehand began searching the vehicle, Plaintiff reminded the vehicle occupants of their rights and asked the occupants why they consented to Forehand's search. (Doc. 1 at 3). At that point, Forehand told Plaintiff to mind his own business or he would become part of the ongoing investigation. (*Id.*). Plaintiff orally responded to Forehand's statement. (*Id.*). After Plaintiff's response, Forehand requested Plaintiff's identification. (*Id.*).

---

[2] A verified complaint "may be treated as an affidavit on summary judgment if it satisfies the standards of Fed. R. Civ. P. 56(e)." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)).

Plaintiff refused. (*Id.*). A few exchanges later, without resistance, Forehand confined Plaintiff in Forehand's patrol vehicle for about 15-20 minutes. (Doc. 1 at 5; Doc. 20-2 at 27). Plaintiff requested that a supervisor be called, and when a Sergeant showed up, Forehand released the Plaintiff. (Doc. 20-2 at 30-32). Apparently, the City of Pensacola never charged Plaintiff with a crime.

Plaintiff initiated this action against Forehand, Gibowski, and the City of Pensacola for violating his constitutional rights. Plaintiff's complaint contains six counts:

Count one: Unlawful arrest, against Forehand and Gibowski, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment.

Count two: Assault, against Forehand, pursuant to Florida law.

Count three: Battery, against Forehand, pursuant to Florida law.

Count four:  False imprisonment, against Forehand and Gibowski, pursuant to Florida law.

Count five: Negligent hiring and supervision, against the City of Pensacola, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment.

Count six:  "*Respondeat superior*" liability for assault, battery, and false imprisonment, against the City of Pensacola, pursuant to Florida law.

Defendants have moved for summary judgment on all counts or, in the alternative, for judgment on the pleadings pursuant to Rule 12(c). (Doc. 20 at 1).

Plaintiff has not filed any response in opposition.[3] In fact, Plaintiff has not supplemented the record with any materials, even though he alleges in his deposition that there is at least one video recording of his interaction with Forehand and Gibowski. (Doc. 20-2 at 8).[4] Thus, the only evidence supporting Plaintiff's position is his verified complaint and his deposition testimony.

## II.    Standard of Review

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has insufficient evidence to support his case or that an affirmative defense precludes the nonmoving party from prevailing at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2252-53 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.*

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

---

[3] When the non-movant files no response to a motion for summary judgment, a court may not automatically grant summary judgment. Instead, the court must consider the merits and determine whether the motion is supported by evidentiary materials. *See United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

[4] The Defendants also did not submit video evidence in support of their motion for summary judgment.

*Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

Speculation or conjecture cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp.*, 477 U.S. at 331, 106 S. Ct. at 2557; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it. *See* Fed. R. Civ. P. 56(e).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). Nevertheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See Celotex Corp.*, 477 U.S. at 331, 106 S. Ct. at 2557. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct at 2552.

### III.    Discussion

### A.    <u>Count One:  Section 1983 Claims Against Forehand and Gibowski</u>

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must put forth sufficient evidence demonstrating that: (1) a defendant deprived him of a right secured under the United States Constitution or federal law; and (2) such deprivation occurred under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 2083 (1994); *Adickes*, 398 U.S. at 150, 90 S. Ct. at 1604; *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017); *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015).

As to whether the Defendants Forehand and Gibowski acted under color of law, the parties do not dispute that, at all relevant times Forehand and Gibowski were employed by the Pensacola Police Department. A defendant acts "under color of law" when he exercises "'power possessed by virtue of state law and made possible'" only because he was "'clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). It is clear from the record that Forehand and Gibowski were acting under the color of law as police officers when Forehand took Plaintiff into custody. *See Byrd v. Stewart*, 811 F.2d 554, 555 (11th Cir. 1987). This remains true, even if, as Plaintiff alleges, they misused their authority to violate his constitutional rights. *See Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031,

1040 (1945) (plurality opinion) ("Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."); *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1268 (11th Cir. 2012) ("A § 1983 defendant who abuses the power and authority given to her by the state acts under color of state law."). Plaintiff, therefore, must only show that the Defendants violated a specific constitutional right. *Albright v. Oliver*, 510 U.S. 266, 270, 114 S. Ct. 807, 811 (1994); *Baker v. McCollan*, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 2694, n.3 (1979).

### 1. *Fourth Amendment and Qualified Immunity*

Defendants moved for summary judgment on the Plaintiff's Fourth Amendment claim for wrongful arrest against Defendants Forehand and Gibowski.[5] (Doc. 20 at 6-11). Defendants Forehand and Gibowski argue that they are entitled to summary judgment on the section 1983 wrongful arrest claim because they had probable cause to believe Plaintiff violated Florida law, and, even if they did not

---

[5] State law torts for wrongful arrest are sometimes called "false arrest" or "false imprisonment." "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007). Most recently, however, the Supreme Court has referred to such claims brought under the Fourth Amendment as "wrongful arrest." *See Manuel v. City of Joliet, Ill.*, 580 U.S. ___, 137 S. Ct. 911, 919 (2017) (stating that a plaintiff who alleged being arrested without probable cause "could bring a claim for wrongful arrest under the Fourth Amendment"). The undersigned, therefore, will also employ that nomenclature.

have probable cause, they were entitled to qualified immunity because they had arguable probable cause. (Doc. 20 at 8-9).

To prevail on a claim of wrongful arrest in violation of the Fourth Amendment, a plaintiff must establish that:

(1)    the defendant had an intent to confine the plaintiff;

(2)    the defendant committed an act that resulted in the plaintiff's confinement;

(3)    the plaintiff was conscious of his confinement or resulting harm; and

(4)    the confinement resulted in the violation of the plaintiff's due process rights (such as seizing someone in violation of the Fourth Amendment).

*Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009); *Ortega v. Christian*, 85 F.3d 1521, 1526 & n.2 (11th Cir. 1996).

The Fourth Amendment safeguards the right to be free from unreasonable seizures. U.S. Const. amend. IV. Arrests are a seizure of the person. *Brendlin v. Cal.*, 551 U.S. 249, 254, 127 S. Ct. 2400, 2405 (2007); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing *California v. Hodari D.*, 499 U.S. 621, 624, 111 S. Ct. 1547, 1549-50 (1991)). A seizure of a person is generally considered reasonable if it is based on: (1) probable cause; or (2) a validly-issued warrant (which usually are based on probable cause). Thus, the general rule is that arrests of persons "are 'reasonable' only if based on probable cause to believe that the individual has

committed a crime." *Bailey v. United States*, 568 U.S. 186, 192, 133 S. Ct. 1031, 1037 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213, 99 S. Ct. 2248, 2257 (1979)); *Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 997 (11th Cir. 2018).

Under the Fourth Amendment, officers may make warrantless arrests if they have probable cause to believe that the person to be arrested has committed a crime. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). "Where probable cause supports an arrest, it acts as 'an absolute bar to a section 1983 action for false arrest.'" *Carter v. Butts Cty. Ga*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting *Kingsland v. City of Miami,* 382 F.3d 1220, 1226 (11th Cir. 2004)) (citation omitted); *see Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018).

A warrantless arrest without probable cause, however, "violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega*, 85 F.3d at 1525; *Michigan v. Summers*, 452 U.S. 692, 700, 101 S. Ct. 2587, 2593 (1981) ("every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause"); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964) (holding that before arresting a suspect, the police must

have "probable cause" to believe that the individual "had committed or was committing an offense"); *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990) ("Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be arrested without probable cause.").

"Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Dist. of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 584 n.2 (2018). "Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632 (1979). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004).

"The probable-cause standard is a practical, nontechnical conception." *Illinois v. Gates*, 462 U.S. 213 (1983). "Probable cause 'is not a high bar.'" *Wesby*, 583 U.S. at ___, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103 (2014)). "Probable cause does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction." *Adams* v. *Williams*, 407 U. S. 143, 148-49, 92 S. Ct. 1921, 1924 (1972). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause . . . ." *Illinois*, 462 at 243 n.13, 103 S. Ct. at 2335 n.13. Whether an officer had probable cause to make an arrest "depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004).

Here, Defendants argue that Forehand and Gibowski had probable cause to arrest Plaintiff because Plaintiff potentially committed "obstruction of justice" in violation of section 843.02, Florida Statutes ("section 843"). (Doc. 20 at 7). Section 843 provides, in pertinent part:

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

Fla. Stat. § 843.02 (2018).[6] The essential elements of this offense are that: (1) a police officer was engaged in the lawful execution of a legal duty; and (2) the action by the person detained constituted obstruction or resistance of that lawful duty. *Davis v. Williams*, 451 F.3d 759, 764 (11th Cir. 2006); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003); *C.E.L. v. State*, 24 So.3d 1181, 1185-86 (Fla. 2009); *Crapps v. Florida*, 155 So.3d 1242, 1246-47 (Fla. Dist. Ct. App. 2015); *Slydell v. State*, 792 So.2d 667, 671 (Fla. Dist. Ct. App. 2001).

As in the Eleventh Circuit's decision in *Davis v. Williams*, the focus here is on the second element, because Forehand obviously was engaged in the lawful exercise of a legal duty insofar as he was engaged in a traffic stop. *Davis*, 451 F.3d at 764; *see Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996) (noting that a police officer may conduct a traffic stop if he has probable cause to believe that a traffic violation has occurred).

With limited exceptions not relevant here, the Eleventh Circuit in *Davis* concluded that "physical conduct must accompany offensive words to support a conviction" for obstruction of justice under section 843. *Davis*, 451 F.3d at 765 (collecting cases); *see Olson v. Stewart*, 737 F. App'x 478, 482 (11th Cir. 2018) (noting that by 2012 "any reasonable officer would have known that probable cause

---

[6] Defendants assert that Forehand had probable cause to believe Plaintiff violated section 843. (Doc. 20 at 7). They do not assert that Forehand had probable cause to believe that Plaintiff committed some other violation of law.

for a violation of § 843.02 could not be based on mere words"); *D.G. v. State*, 661 So.2d 75, 76 (Fla. Dist. Ct. App. 1995) (stating that if a police officer is not engaged in executing process on a person, is not legally detaining that person, or has not asked the person for assistance with an ongoing emergency, the "person's words alone can rarely, if ever, rise to the level of obstruction").[7] A "person's exercise of free speech, without more, in an open public place while an officer is engaged in the execution of a legal duty must do more than merely irritate, annoy, or distract the officer to constitute a crime." *D.A.W. v. State*, 945 So.2d 624, 627 (Fla. Dist. Ct. App. 2006).

Here, there is no dispute that Plaintiff did not engage in any physical conduct that would constitute obstruction of justice in violation of section 843. *See D.A.W.*, 945 So.2d at 627 (holding that there was no obstruction when a verbally offensive juvenile "remained at a distance" of 15 to 30 feet, did not approach or physically threaten the officer, the officer did not fear for his own safety, and the arrest process was not interrupted by the juvenile's conduct); *State v. Dennis*, 684 So.2d 848, 849 (Fla. Dist. Ct. App. 1996) (holding police did not have probable cause to arrest for obstruction when the defendant was warning others that undercover officers were in the area by yelling the term "ninety-nine"). In any event, the record is devoid of any

---

[7] Words alone may result in obstruction of justice under § 843.02 when a police officer is (1) serving process; (2) lawfully detaining a person; or (3) asking for assistance. *Davis*, 451 F.3d at 765 n.9 (citing to *Francis v. State*, 736 So.2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999)). None of these exceptions apply in Plaintiff's case.

such evidence. He did not block the Defendants or prevent them from performing their police duties. Accordingly, the Defendants did not have probable cause to arrest the Plaintiff for obstruction of justice under § 843.02. This, however, does not end this court's inquiry: "If an officer lacked probable cause to arrest," the court must consider "whether *arguable* probable cause supported the arrest at the time. . . . If so, the officer is still entitled to qualified immunity, even in the absence of actual probable cause." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (citations omitted).

Qualified immunity is a shield from liability for government actors, prohibiting "civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Because qualified immunity is an immunity from suit, *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985), government actors can carry out discretionary duties without fear of liability or even litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 743, S. Ct. 2074, 2085 (2011) (The defense gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions). In other words, qualified immunity affords "protection to all but the plainly incompetent or those who knowingly violate

the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986); *see Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

An official asserting qualified immunity must first establish that he was acting within the scope of his "discretionary authority at the time of the alleged constitutional violation." *Morris v. Town of Lexington, Ala.*, 748 F.3d 1316, 1321 n.15 (11th Cir. 2014); *see Lee*, 284 F.3d at 1194. Once the official proves that he was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff to establish: (1) a violation of a constitutional or statutory right, and (2) that the right was clearly established when the violation in question occurred such that any reasonable officer "would understand that what he is doing violates that right." *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)); *see Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16 (2009).

A plaintiff can demonstrate that a right is clearly established by producing a directly applicable statute, "materially similar case decided by the Supreme Court, the [Eleventh Circuit], or the highest court of the relevant state . . . [or] by point[ing] to a broader, clearly established principle [that] should control the novel facts in [his] situation," or by proving that the officer's action so obviously violated the constitution that prior case law is simply unnecessary. *Morton*, 707 F.3d at 1282 (internal citations and quotations omitted). Nonetheless, a constitutional provision,

statute, or the facts of a prior case need not be "'on all fours with materially identical facts' to prevail." *West v. Davis*, 767 F.3d 1063, 1079 (11th Cir. 2014) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004)); *see Taylor v. Barkes*, 575 U.S. ___, 135 S. Ct. 2042, 2044 (2015) ("We do not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate.").

As explained above, the first step in this court's qualified immunity analysis is to determine whether Defendants Forehand and Gibowski were acting within the scope of their "discretionary authority at the time of the alleged constitutional violation." *Morris*, 748 F.3d at 1321 n.15. It is undisputed that the Defendants were acting within their discretionary authority when conducting a traffic stop. *See Manners* v. Cannella, 891 F.3d 959, 967-68 (11th Cir. 2018). Next, Plaintiff must show that Defendants violated his constitutional or statutory right and that right was clearly established.

When addressing false arrest claims under section 1983, "[a]rguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999); *see Wesby*, 583 U.S. at ___, 138 S. Ct. at 591 ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s

present.'") (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S. Ct. 3034, 3039-40 (1987)). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Carter*, 821 F.3d at 1320 (citing *Anderson v. Creighton,* 483 U.S. at 641, 107 S. Ct. at 3039-40).

Thus, the inquiry is "whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." *Lee,* 284 F.3d at 1195 (quoting *Vaughan v. Cox,* 264 F.3d 1027, 1036 (11th Cir.2001)). This standard does not shield officers who unreasonably conclude that probable cause exists. *Carter*, 821 F.3d at 1319 (citing *Skop,* 485 F.3d at 1137). "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Id.* at 1320 (11th Cir. 2016) (citing *Case,* 555 F.3d at 1327 (11th Cir.2009)).

As discussed above, Defendants Gibowski and Forehand did not have probable cause to arrest Plaintiff. To the extent that the Defendants contend that they had arguable probable cause, given the well-established law on § 843.02 and the circumstances of this case, no reasonable officer could have believed probable cause existed. *See Olson*, 737 F. App'x at 482 (noting that by 2012 "any reasonable officer would have known that probable cause for a violation of § 843.02 could not be based on mere words"); *Davis*, 451 F.3d at 765 (holding that "physical conduct must

accompany offensive words to support a conviction" for obstruction of justice under section 843).

In an attempt to establish that arguable probable cause exists, Defendants argue that "there are no cases holding the [P]laintiff's behavior did not violate the law such that the defendants were on notice an arrest would be unconstitutional." (Doc. 20 at 10). This argument ignores Eleventh Circuit precedent. In *Davis*, after carefully reviewing Florida appellate decisions, the Eleventh Circuit concluded that an officer does not have arguable probable cause to arrest a suspect for obstruction of justice without some physical act that interferes with or obstructs the officer's actions. *Davis*, 451 F.3d at 765-66. According to the Eleventh Circuit, merely yelling, verbally protesting, insulting, or disrespecting officers is not enough, without some physical obstruction to constitute a criminal offense under section 843. *Id.* at 766-67. This holding has been recognized in subsequent decisions at both the federal and state level. *See, e.g.*, *Olson*, 737 F. App'x at 482; *Derosa v. Rambosk*, 732 F. Supp.2d 1285, 1298 (M.D. Fla. 2010); *D.A.W.*, 945 So.2d at 627.

Additionally, Defendants argue that in *R.E.D. v. State*, 903 So.2d 206, 209 (Fla. Dist. Ct. App. 2004), a Florida state judge explained in his dissent that the Florida courts' interpretation of section 843 was inconsistent. (Doc. 20 at 10). Officer Forehand's argument is not persuasive because the Eleventh Circuit's discussion of section 843 in *Davis* occurred two years after *R.E.D. v. State* and

afforded ample time for Defendants Forehand and Gibowski to understand the reach of section 843. *See Morton*, 707 F.3d at 1282 (quoting *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515) (A plaintiff can demonstrate that a right is clearly established by referencing a directly applicable statute or "materially similar case decided by the Supreme Court, the [Eleventh Circuit], or the highest court of the relevant state").[8]

Finally, Defendants cite an unpublished decision, *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 907 (11th Cir. 2006), for the proposition that yelling, cursing, and interrupting an officer in a manner that impedes an officer's investigation of a crime constitutes probable cause under section 843. (Doc. 20 at 8). Defendants' reliance to *Sullivan* misses the mark. In *Sullivan*, although it was disputed whether the plaintiff physically touched the officer, it was undisputed that

---

[8] Courts have held that minimally obstructive behavior can nonetheless establish probable cause for purposes of resisting arrest without violence. But in those cases, the target of the law-enforcement officer's request to leave was also the subject of the initial officer contact. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1071-72 (11th Cir. 2008) (finding probable cause for resisting arrest without violence where the target of an altercation with law-enforcement officers stood up after being ordered to sit down); *Rodi v. Rambosk*, No. 2:13-cv-556, 2014 WL 1876218, at *5 (M.D. Fla. May 9, 2014) (holding that probable cause to arrest for resisting arrest without violence existed when the subject of a traffic stop ignored direct orders to exit his vehicle after being pulled over). Plaintiff was not the subject of the initial traffic stop. Plaintiff was simply a bystander. These cases therefore are inapposite here. *See F.B. v. State*, 605 So.2d 578, 579 (Fla. Dist. Ct. App. 1992) ("Where an officer has no basis to detain an individual, the individual's action in ignoring an officer's command to stop cannot constitute resisting arrest.").

the plaintiff came close to the officer in an attempt to look at his name tag. *Sullivan*, 161 F. App'x at 907. It was further undisputed that the plaintiff was charged with battery upon a law enforcement officer and that the plaintiff ignored the officer's instructions to return to the vehicle and continued to approach the officer. *Id.* at 907-08. Those facts are different from those in the Plaintiff's case. (Doc. 1 at 5). *Sullivan*, therefore, does not compel a different result in this case.

For the foregoing reasons, Defendants Forehand and Gibowski are not entitled to qualified immunity.

### 2.    *Decision to Arrest*

With respect to Defendant Gibowski, he argues that he is entitled to summary judgment on the section 1983 unlawful arrest claim because he was not personally involved in the decision to arrest the Plaintiff. (Doc. 20 at 8). To support his position, Gibowski relies on *Brown v. City of Huntsville, Ala.*, where the Eleventh Circuit held that to be liable for false arrest under section 1983, an officer must make the decision to arrest the plaintiff. 608 F.3d 724, 736 (11th Cir. 2010). The Eleventh Circuit also noted that

> to establish § 1983 liability, a plaintiff must show "proof of an affirmative causal connection" between a government actor's acts or omissions and the alleged constitutional violations, which "may be established by proving that the officer was personally involved in the acts that resulted in the constitutional deprivation." *Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Merely being present with the arresting officers at the scene is not enough, unless the plaintiff

can show that the defendant officer was part of the chain of command authorizing the arrest action.

*Id.* at 737.

In *Brown* the plaintiff was inside her vehicle listening to "loud" music in a parking lot, when Sergeant Norris approached her and informed her that she could go to jail for playing music too loud. *Id.* at 729. After a few exchanges, Norris sprayed the plaintiff with pepper spray in her mouth, eyes, and face. *Id.* at 730-31. Subsequently, Norris threw the plaintiff out of the vehicle and slammed her to the ground. *Id.* at 731. Investigator Anderson, who was nearby, assisted Norris in removing the plaintiff from her vehicle by pulling the plaintiff out of the vehicle and placing the plaintiff face down on the ground. *Id.* Norris and Anderson then handcuffed the plaintiff. *Id.* When discussing Anderson's possible liability for false arrest, the Eleventh Circuit explained: "Plaintiff Brown's false arrest claim against Defendant Anderson also fails. Norris, not Anderson, made the decision to arrest Brown." *Id.* at 736; *see also Dawson v. Jackson*, No. 2:16-cv-1738-RDP, 2017 WL 3620254, at *3 (N.D. Ala. Aug. 23, 2017) (applying *Brown* and holding that "[plaintiff's] claim of false arrest against Defendant Watson falters because Watson was not the person that performed the arrest. The video clearly shows that it was Defendant Jackson who arrested Plaintiff").

In the instant action, it is undisputed that Forehand made the decision to arrest Plaintiff because Plaintiff's verified complaint explained that Gibowski assisted

Forehand only after Forehand already initiated the arrest of the Plaintiff. (Doc. 1 at 5). Forehand's signed report confirms this. (Doc. 20-1 at 2). There also is no evidence in the record indicating that Gibowski touched the Plaintiff or in any way rendered physical assistance with the arrest. (Docs. 1 at 5, 20-1 at 2, 20-2 at 32-33).

Under *Brown*, Gibowski cannot be liable for unlawful arrest pursuant to section 1983. In *Brown*, although Anderson pulled the plaintiff out of the vehicle, placed her face-down on the ground, and handcuffed her, the Eleventh Circuit held that Anderson could not be liable for false arrest because Anderson did not make the decision to arrest the plaintiff and the plaintiff failed to identify conduct that would support a false arrest claim. *Brown*, 608 F.3d at 731, 736. The same reasoning applies here. Forehand, not Gibowski, made the decision to arrest Plaintiff. (Doc. 1 at 5). Whatever assistance Gibowski rendered to Forehand during the arrest does not support an unlawful arrest claim under section 1983. For these reasons, the District Court should grant summary judgment for Gibowski on the unlawful arrest claim (count one).

### B.    Count Five:  Section 1983 Claim Against the City of Pensacola

Defendants have also moved for summary judgment on count five, Plaintiff's section 1983 claims of negligent hiring and supervision against the City of Pensacola. (Doc. 20 at 14-17).

It is well established that municipalities may not be held liable in a section 1983 action under a *respondeat superior* theory. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-94, 98 S. Ct. 2018, 2036-38 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Monell*, 436 U.S. at 694, 98 S. Ct at 2037-38. To impose section 1983 liability on a municipality, a plaintiff therefore must establish "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989)); *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 403-04, 117 S. Ct. at 1388 ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy or custom' that caused the plaintiff's injury"). This is often referred to as the *Monell* framework.

Policies are either officially adopted by the municipality or are created by a sufficiently high-ranking individual such that he could be said to be acting on behalf of the municipality. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.

1997). Customs are practices that are so pervasive and settled such that they have the force of law. *Id.; see Bd. of Cty. Com'rs of Bryan Cty.*, 520 U.S. at 404, 117 S. Ct. at 1388 ("An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so *widespread* to have the force of law."). Thus, for a municipality to be liable under *Monell*, "[a] pattern of similar constitutional violations . . . is ordinarily necessary" because a "single incident would not be so pervasive as to be a custom." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks omitted); *see City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality.).

Plaintiff's section 1983 claim against the City of Pensacola fail because there is no evidence in the record that the City of Pensacola had a policy or custom of: (1) exhibiting deliberate indifference to individuals' constitutional rights; (2) not exercising reasonable care when hiring its police officers; or (3) inadequately training and supervising its police officers. Each is addressed below.

### 1.    *Policies or Customs in Deprivation of Constitutional Rights*

Plaintiff first argues that the City of Pensacola is liable under section 1983 because it "developed and maintained policies or customs exhibiting deliberate

indifference to the constitutional rights of persons in the City of Pensacola, which caused the violation of Plaintiff's rights." (Doc. 1 at 6-7).

Aside from conclusory statements, Plaintiff has not provided any evidence of a policy exhibiting deliberate indifference to individuals' constitutional rights, however. Thus, there is nothing in the record showing that the City of Pensacola had a policy or custom of arresting individuals without probable cause. In fact, when Plaintiff in his deposition was asked whether Forehand or Gibowski had improperly detained anyone else, Plaintiff answered "[n]ot that I know of." (Doc. 20-2 at 43-44). Plaintiff has not even alleged *any* other incidents of unconstitutional conduct by the City of Pensacola. Thus, the City of Pensacola cannot as a matter of law be subject to *Monell* liability because Plaintiff has not shown that it had a policy or custom of falsely arresting individuals. *Craig*, 643 F.3d at 1310.

### 2.    *Policies or Customs of Negligent Hiring and Inadequate Training*

Next, Plaintiff argues that it was the policy or custom for the City of Pensacola to exercise unreasonable care when hiring its police officers. (Doc. 1 at 7). Plaintiff further argues that the City of Pensacola had a custom or policy of inadequately supervising and training its police officers. (Doc. 1 at 7).

The Supreme Court and Eleventh Circuit have questioned whether an alleged policy of negligent hiring or retention is actionable under section 1983, as such a claim could impermissibly impose liability on municipalities pursuant to *respondeat*

*superior. See Fundiller v. Cooper City*, 777 F.2d 1436, 1442-43 (11th Cir. 1985) (noting that it is "questionable whether an alleged policy of inadequate training or negligent hiring will suffice to impose liability on a municipality for the unconstitutional actions of its police officers") (citing *Tuttle*, 471 U.S. at 824, 105 S. Ct. at 2436 & n.7, n.8); *see also, Bd. of Cty. Comm'rs of Bryan Cty.,* 520 U.S. at 415, 117 S. Ct. at 1393-94 (holding that "in the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. . . .").

Regardless, the evidence in this case fails to establish any policy or custom of negligent hiring or retention. When Plaintiff was asked how the City of Pensacola failed to exercise reasonable care in hiring Forehand and Gibowski, Plaintiff responded by stating: "I'm not really sure, it's just something I'll have to think --." (Doc. 20-2 at 39). Plaintiff subsequently affirmed that he did not have any idea as to how the City of Pensacola failed to exercise reasonable care in hiring Officers Forehand and Gibowski. (Doc. 20-2 at 39). That is insufficient to demonstrate that the City of Pensacola failed to exercise reasonable care when hiring its officers. Thus, Plaintiff's negligent hiring and retention claim fails because Plaintiff has not established a policy or custom of negligent hiring or retention.

With respect to liability based on a failure to train theory, the Supreme Court has held that a municipality may be subject to liability under section 1983 on a failure to train theory. *City of Canton, Ohio*, 489 U.S. at 388, 109 S. Ct. at 1204-05. "There are 'limited circumstances' in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights." *Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998)).

The Eleventh Circuit, echoing the *Monell* framework, explained that a successful inadequate-training suit against a municipality requires the plaintiff to show that "(1) the government inadequately trained or supervised its employees; (2) the failure to train is an official policy; and (3) the policy caused the employees to violate the plaintiff's rights." *See Thomas*, 261 F.3d at 1173. However, inadequate police training or supervision "may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *Harris*, 489 U.S. at 388, 109 S. Ct. at 1204-05. To meet this "deliberate indifference" standard, "a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v City of Miami, Fla.*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (citing *Gold*, 151 F.3d at 1350-51).

Plaintiff has failed to carry his burden of demonstrating that: (1) the City of Pensacola inadequately trained or supervised its employees; (2) the failure to train is an official policy of the City of Pensacola; or (3) that official policy caused Officers Forehand and Gibowski to violate Plaintiff's rights. *See Thomas*, 261 F.3d at 1173. Because Plaintiff elected not to respond to the Defendants' motion for summary judgment, the only documents presented to this court in support of Plaintiff's claims are his verified complaint and his deposition.

In his deposition, Plaintiff testified that Forehand and Gibowski's supervising sergeant explained that "everything that [Forehand and Gibowski] did was wrong." (Doc. 20-2 at 19). Plaintiff further testified that "the Pensacola Police Department is poorly training these individuals—because from what I understand, this Forehand has been officer of the month." *Id.* at 21. When Plaintiff was asked how the City of Pensacola inadequately supervised Forehand and Gibowski, Plaintiff responded by stating, "Officer Gibowski and Officer Forehand, acting under the color of law, exercised authority that they didn't have towards me. That means that they didn't know their own rule book." (Doc. 20-2 at 40–41). Plaintiff continued: "[n]o one has trained [Forehand] properly, because if he had been trained properly, he would have been doing [his job] well." (Doc. 20-2 at 43). Finally, when Plaintiff was asked in his deposition what the city could have done to train Officers Forehand and Gibowski properly his answer was: "[n]ot really sure." (Doc. 20-2 at 37).

Plaintiff's speculation does not satisfy the Eleventh Circuit's rigorous requirements for municipal liability. *See Thomas*, 261 F.3d at 1173. In fact, Plaintiff's speculation is not even logically sound. The fact that an employee did something wrong does not necessarily mean that he was not properly trained. An employee who was trained properly still could do something wrong, whether in error, out of negligence, or because he deliberately intended to disregard his training.

Furthermore, Plaintiff has not provided evidence that the City of Pensacola was aware of the need for additional training or supervision regarding wrongful arrests. *See Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 637 F.3d at 1189. Plaintiff has failed to show that his detention was anything more than an isolated event involving only two police officers, as opposed to a systemic problem. *See Casado v. Miami-Dade Cty.*, 340 F. Supp.3d 1320, 1327 (S.D. Fla. 2018) ("Neither the Supreme Court nor the Eleventh Circuit has ever imposed municipal liability based on a single incident under *Monell*."); *see also Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.") (internal citations omitted); *Whitaker v. Miami-Dade County*, 126 F. Supp.3d 1313, 1325 (S.D. Fla. 2015). Plaintiff's conclusory allegations are not enough to create a triable issue of fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (noting that speculation or

conjecture from a party cannot create a genuine issue of material fact.) Thus, Plaintiff's failure to train claim also cannot be sustained.

For the foregoing reasons, the District Court should grant summary judgment for the City of Pensacola on count five.

### C.   Counts Two, Three, Four, and Six:  Florida State Law Claims

#### 1.   *Forehand and Gibowski's Liability for Assault, Battery and False Imprisonment*

Defendants move for summary judgment on Plaintiff's claim against Defendant Forehand for assault (count two) and battery (count three). Defendants also move for summary judgment on Plaintiff's claims against Defendants Forehand and Gibowski for false imprisonment (count four). Defendants argue that they are immune from liability in their individual capacities under section 768.28(9) of the Florida Statutes because Plaintiff has failed to show malice, bad faith, or a willful disregard of human rights, safety, or property. (Doc. 20 at 11-13).

Section 768.28(9)(a) of the Florida Statutes provides that no state employee shall be held personally liable in tort resulting from his employment unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . ."  Fla. Stat. § 768.28(9)(a) (2016). Thus, under section 786.28(9)(a), in order for a plaintiff to sue an individual police officer in his or her individual capacity, the plaintiff must show that the officer acted in bad faith, with a malicious purpose, or in a manner exhibiting

wanton and willful disregard of human rights. *Id.* "The plain language of 768.28(9)(a) . . . states that a government employee cannot be 'named as a defendant' in an action arising out of his employment unless he acted maliciously or in bad faith." *Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1369 (11th Cir. 2016) (citing *Keck v. Eminisor*, 104 So.3d 359, 366 (Fla. 2012) (per curiam)); *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004).

In the instant case, not only has Plaintiff failed to show that Forehand and Gibowski acted in bad faith or with a malicious purpose, Plaintiff has not even made such an argument. Rather, the Plaintiff credits Forehand's intentions by testifying that Forehand "was genuinely just trying to do his job." (Doc. 20-2 at 12). Further, Plaintiff testified that Forehand is "a very genuinely kind man . . . he's a great guy." *Id.* at 21-22. Finally, Plaintiff confirmed that the Defendants did not injure him. *Id.* at 16. The evidence, including Plaintiff's testimony, does not indicate that Forehand and Gibowski acted in bad faith, with malice, or in wanton and willful disregard of human rights. In light of that, both are entitled to immunity under section 786.28(9)(a).

Because Forehand and Gibowski are entitled to immunity pursuant to section 768.28(9)(a), the undersigned recommends that the District Court grant summary judgment for the Defendants on counts two, three, and four.

    **2.**    ***Count Six:  The City of Pensacola's Liability for Assault, Battery, and False Imprisonment***

Defendants also move for summary judgment on Plaintiff's claims against the City of Pensacola for assault, battery, and false imprisonment. (Doc. 20 at 17-18).

Florida generally waives sovereign immunity for tortious acts committed by the state, its agencies, or subdivisions. Fla. Stat. § 768.28(1) (2016). Municipalities are thus encompassed by that waiver. *Laster v. City of Tampa Police Dep't.*, 575 F. App'x 869, 872 (11th Cir. 2014) ("Florida Law . . . allows a plaintiff to recover against a municipality for the tortious acts of its employees based upon a theory of *respondeat superior.*") (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 n.18 (11th Cir. 1988); *Sebring Utils. Comm'n v. Sicher*, 509 So.2d 968, 969 (Fla. Dist. Ct. App. 1987)).

Florida has not waived sovereign immunity for torts committed by an officer, employee, or agent while acting outside the scope of his or her employment or torts committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As was demonstrate above, there is no evidence that Forehand nor Gibowski acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Sovereign immunity, therefore, would not preclude the City of Pensacola from being held liable for the Plaintiff's assault, battery, and false imprisonment claims.

The City of Pensacola argues, however, that count five of the complaint should be dismissed because Plaintiff failed to allege compliance with the statutory notice provision of section 768.28, Florida Statutes. Specifically, section 768.28 provides that:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.

Fla. Stat. § 768.28(6)(a).

"[T]he purpose of the notice requirement is to provide the State and its agencies sufficient notice of claims filed against them and time to investigate and respond to those claims." *Vargas v. City of Fort Myers*, 137 So.3d 1031, 1033-34 (Fla. Dist. Ct. App. 2014) (quoting *Aitcheson v. Fla. Dep't of Highway Safety & Motor Vehicles*, 117 So.3d 854, 856 (Fla. Dist. Ct. App. 2013)). "A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to amend his complaint to allege compliance with the notice requirement." *Fletcher v. City of Miami*, 567 F. Supp.2d 1389, 1393 (S.D. Fla. 2008) (internal quotation marks omitted). However, in instances "[w]here the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice." *Wagatha*

*v. City of Satellite Beach*, 865 So.2d 620, 622 (Fla. Dist. Ct. App. 2004) (quoting *Menendez v. North Broward Hosp. Dist.*, 537 So.2d 89, 91 (Fla. 1988)); *see Williams v. Becker*, 608 F. App'x 905, 906-07 (11th Cir. 2015) (affirming summary judgment when Plaintiff failed to comply with the Fla. Stat. 768.28(6)(a) within three years of accrual of the cause of action).

The claims at issue in the instant case occurred on August 14, 2015. (Doc. 1 at 3). Thus, if Plaintiff failed to provide the statutory notice of his claims to the City of Pensacola, the time for providing such notice has already expired. *See Fletcher*, 567 F. Supp.2d at 1393; *Williams*, 608 F. App'x. at 906-07. Plaintiff has not provided any indication that he complied with section 786.28(6)(a). Accordingly, the District Court also should grant summary judgment for the City of Pensacola on count six.

## D.   <u>Request for Injunctive Relief against the City of Pensacola</u>

Finally, the City of Pensacola argues that the Plaintiff lacks standing to seek an injunction regarding the City's policies regarding hiring and training of police officers. (Doc. 20 at 18-19).

In order to obtain injunctive relief, Plaintiff must establish standing by showing that:

> "(1) the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concreate and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of— the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third

party not before the court; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011) (citing *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009)); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). "The "injury-in-fact" demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001)). Thus, there must be a "real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* (quoting *Shotz*, 256 F.3d at 1081).

Because there is no evidence that the City of Pensacola has an official policy of violating constitutional rights, failing to train its employees, or exercising reasonable care in hiring its employees, Plaintiff has not shown that there is any real or immediate threat of future injury. *See, e.g.*, *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) (holding that "when the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again"). Thus, Plaintiff lacks standing to seek an injunction regarding the City of Pensacola's policies.

## IV.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Defendants' motion for summary judgment (Doc. 20), be **GRANTED IN PART** and **DENIED IN PART**.

2.     Summary judgment be **GRANTED** in favor of the Defendants on counts two, three, four, five, and six.

3.     Summary Judgment be **GRANTED** regarding Plaintiff's § 1983 claim against Officer Gibowski in his individual capacity in count one.

4.     Summary Judgment be **DENIED** regarding Plaintiff's § 1983 claim against Officer Forehand in his individual capacity in count one.

5.     The District Court recommit this case to the undersigned magistrate judge to prepare the case for trial.

6.     The Clerk of the Court be directed to enter judgment accordingly and update the docket to reflect that the sole remaining Defendant is Officer Forehand in his individual capacity.

At Panama City, Florida this 28th day of February, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.